Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

<br>

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN KERSHNER, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| SLR SENIOR INVESTMENT CORP., MICHAEL GROSS, BRUCE SPOHLER, STEVEN HOCHBERG, DAVID WACHTER, and LEONARD POTTER, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, John Kershner ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against SLR Senior Investment Corp. ("SUNS" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and together with SUNS, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to SLR Investment Corp. ("Parent") through merger vehicle Solstice Merger Sub ("Merger Sub," and together with Parent, "SLRC"), as a result of an

unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 1, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, SUNS will become an indirect wholly-owned subsidiary of Parent. SUNS public stockholders will receive, in exchange for each share of SUNS stock, 0.7763 shares of Parent Common Stock.

3.      Thereafter, on February 3, 2022, SUNS filed a Definitive Proxy Statement on Form DEFM14A (the "Definitive Proxy Statement"), with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of other reasons. Significantly, the Definitive Proxy Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no market check for potentially interested third parties was conducted.

5.      Notably, the Boards of Directors and Management of both SUNS and SLRC are comprised of the same persons, creating a conflict of interest.

6.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7.      In violation of the Exchange Act, on February 3, 2022, Defendants caused to be filed the materially deficient Definitive Proxy Statement.  The Definitive Proxy Statement is materially deficient, and is thus in violation of the Exchange Act.  As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for SUNS and SLRC, provided by SLRC to the Board's financial advisor Keefe, Bruyette & Woods, Inc. ("KBW") and SUNS financial advisor Lokey Capital, Inc. ("Houlihan Lokey"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by KBW and Houlihan Lokey and provided to the Company and the Board.

8.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

9.      Plaintiff is a citizen of Washington and, at all times relevant hereto, has been a SUNS stockholder.

10.      Defendant SUNS is a Business Development Company (BDC) that provides equity investors access to an illiquid private credit asset class through a yield-oriented, publicly-traded common stock. The Company has its principal place of business at 500 Park Avenue, New York, NY 10022.  Shares of SUNS common stock are traded on the NasdaqGS under the symbol "SUNS."

11.      Defendant Michael Gross ("Gross") has been a Director of the Company at all relevant times.  In addition, Gross serves as one of the Company's Co-Chief Executive Officer ("Co-CEO").  Notably Gross holds these same roles in SLRC.

12.     Defendant Bruce Spohler ("Spohler") has been a Director of the Company at all relevant times.  In addition, Spohler serves as one of the Company's Co-Chief Executive Officer ("Co-CEO").  Notably Spohler holds these same roles in SLRC.

13.     Defendant Steven Hochberg ("Hochberg") has been a director of the Company at all relevant times.  Notably Hochberg holds these same roles in SLRC.

14.     Defendant David Wachter ("Wachter") has been a director of the Company at all relevant times.  Notably Wachter holds these same roles in SLRC.

15.     Defendant Leonard Potter ("Potter") has been a director of the Company at all relevant times.  Notably Potter holds these same roles in SLRC.

16.     Defendants identified in ¶¶ 10 - 14 are collectively referred to as the "Individual Defendants."

17.     Non-Party Parent is a business development company specializing in secured debt (first lien unitranche and second lien), subordinated (unsecured) debt, minority equity, leveraged buyouts, acquisitions, recapitalizations, general refinancing, growth capital and strategic income-oriented control equity investments in leveraged middle market companies.  It invests in the form of senior secured loans, mezzanine loans, and equity securities. It may also seek investments in thinly traded public companies and also make secondary investments. The fund makes non-control equity investments. It primarily exits within three years of the initial capital commitment.

18.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because SUNS maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

### Company Background

22.     SUNS is a business development company specializing in investments in leveraged buyouts, acquisitions, recapitalizations, growth capital, general refinancing and private middle-market companies in the United States. The fund invests in the form of senior secured loans, mezzanine loans and equity securities including first lien, unitranche, and second lien debt instruments. It prefers private equity style investing to credit and non-control equity opportunities. It prefers to make equity investments are primarily in niche specialty or commercial finance companies. It does not invest in start-up companies or companies having speculative business plans.

23.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction,

indicated sustained and solid financial performance.  For example, in the August 3, 2021 Earnings Call announcing its 2021 Q2 financial results, the Company highlighted such milestones as a net investment income of $4.0 million, or $0.25 per average share, for the quarter ended June 30, 2021..

24.     Speaking on these positive results, Co-CEO Defendant Gross commented on the Company's positive results as follows, "We are pleased with the 15% growth in SUNS' comprehensive portfolio during the second quarter, predominantly driven by an increase in our asset-based lending verticals, Additionally, net investment income increased 25%, and we are optimistic about further earnings growth in the coming quarters."

25.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by SUNS.  Clearly, based upon these positive results and outlook, the Company is likely to have future success.

26.     Despite this upward trajectory, the Individual Defendants have caused SUNS to enter into the Proposed Transaction without providing requisite information to SUNS stockholders such as Plaintiff.

*The Flawed Sales Process*

27.     As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28.     Of significant import, it appears that all members of the SUNS Board and SUNS management also serve in identical roles on the Board of SLRC and in SLRC management, creating a clear conflict of interest.  To that end, despite the Definitive Proxy Statement indicating

that both the SUNS Board and the SLRC Board creating committees of independent Board members to run the sales process, such a statement is factually impossible, considering that the so-called "Independent" members of the SUNS special committee (namely Defendants Potter, Hochberg, and Wachter) sat on both sides of the transaction, and laughably, also composed the "Independent" SLRC special committee.

29.     This clear conflict of interest is compounded by the fact that the Definitive Proxy Statement indicates that no market check was performed by the Board or by anyone on its behalf for potentially interested third parties at any point during the sales process. Rather the Definitive Proxy Statement makes it clear that the goal from the inception of the sales process was to sell the Company to SLRC.

30.     In addition, the Proposed Transaction does not provide a specific amount of merger consideration, stating only that it will be determined within 48 hours of the date of the closing of the transaction, resulting in Plaintiff and other SUNS stockholders not knowing how much consideration they stand to receive should the Proposed Transaction be consummated, and hampering Plaintiff's ability to have all relevant information prior to voting on the Proposed Transaction.

31.     Moreover, the Definitive Proxy Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and SLRC and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Definitive Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     It is not surprising, given this background to the overall sales process, that it was

conducted in a completely inappropriate and misleading manner

***The Proposed Transaction***

33.     On November 8, 2021, SUNS and SLRC issued a joint press release announcing

the Proposed Transaction.  The press release stated, in relevant part:

> **NEW YORK, Dec. 01, 2021 (GLOBE NEWSWIRE)** -- SLR Investment Corp.
> (NASDAQ: SLRC) ("SLRC") and SLR Senior Investment Corp. (NASDAQ:
> SUNS) ("SUNS") today announced that they have entered into an agreement to
> merge together, with SLRC as the surviving company, subject to stockholder
> approval and customary closing conditions. The Boards of Directors of both SLRC
> and SUNS, on the recommendation of their special committees consisting only of
> the independent directors, have unanimously approved the transaction.
>
> Under the terms of the proposed merger, SUNS shareholders will receive an amount
> of SLRC shares with a net asset value ("NAV") equal to the NAV of SUNS shares
> that they hold at the time of closing. The exchange ratio will be determined within
> forty-eight hours prior to the closing such that shares issued by SLRC to SUNS
> shareholders will result in an ownership split of the combined company based on
> the respective NAVs of each of SLRC and SUNS. For illustrative purposes, based
> on NAVs as of September 30, 2021 and including expected transaction costs and
> distributions, SLRC would issue approximately 0.7763 shares for each SUNS share
> outstanding, resulting in approximate pro forma ownership of 77.2% for current
> SLRC stockholders and 22.8% for current SUNS stockholders.
>
> SLR Capital Partners, LLC ("SLR Capital Partners" or "we," "us," or "our") will
> continue to serve as the investment adviser of the combined company and all
> current SLRC officers and directors will remain in their current positions. Effective
> upon closing of the merger, SLR Capital Partners has voluntarily agreed to a 25
> basis points reduction of the base management fee, resulting in a base management
> fee of 1.50% on gross assets up to 200% of SLRC's total net assets as of the
> immediately preceding quarter end. SLRC will retain the contractual annual base
> management fee payable by SLRC of 1.00% on gross assets that exceed 200% of
> SLRC's total net assets as of the immediately preceding quarter end.
>
> The combined company will trade under the ticker symbol "SLRC" on the Nasdaq
> Global Select Market and currently expects to continue to pay a quarterly
> distribution of $0.41 per share to the combined company's shareholders. However,
> there can be no assurance that the combined company will pay quarterly
> distributions at this amount or in any amount, and all future distributions will be
> subject to the approval of the combined company's board of directors.

"Our announcement represents an important step to further drive value for the shareholders of SLRC and SUNS," said Michael Gross, Co-Chief Executive Officer of SLRC and SUNS. "We look forward to leveraging the benefits provided by the larger combined company which will operate with greater scale, portfolio diversity and financial flexibility."

Bruce Spohler, Co-Chief Executive Officer of SLRC and SUNS, said, "We believe the proposed merger of SUNS into SLRC will provide several immediate and long-term benefits to shareholders of both companies and will position us to continue to deliver strong risk-adjusted returns and investment performance for both groups of shareholders."

### *Potential Conflicts of Interest*

34.     The breakdown of the benefits of the deal indicate that SUNS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of SUNS.

35.     Notably, as stated above, the SUNS Board and management sit on both sides of the transaction, and are conflicted.

36.     Thus, while the Merger is not in the best interest of SUNS stockholders, it will produce lucrative benefits for the Company's officers and directors.

### *The Materially Misleading and/or Incomplete Definitive Proxy Statement*

37.     On February 3, 2022, the Defendants caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

38.     Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Definitive Proxy Statement fails to disclose:

  a.   Adequate information regarding why the Board agreed to a Proposed Transaction which did not provide for a specific amount for the merger consideration;

  b.   Adequate information regarding how it was determined that the special committee of the SUNS board was independent and disinterested if the same persons comprised the SLRC board;

  c.   Whether any existing confidentiality agreements entered into by the Company with SLRC differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

  d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including SLRC, would fall away.

*Omissions and/or Material Misrepresentations Concerning SUNS and SLRC Financial Projections*

39.     The Definitive Proxy Statement fails to provide material information concerning financial projections for SUNS and SLRC provided by SLRC management to the Board, KBW,

and Houlihan Lokey, and relied upon by KBW and Houlihan Lokey in their analyses.  The Definitive Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

40.     Therefore, the Definitive Proxy Statement should have, but fails to provide, certain information in the projections that SLRC management provided to the Board, KBW, and Houlihan Lokey.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

41.     With regard to the Projections provided by SLRC Management for SUNS, SLRC, and the Pro Forma Entity, the Definitive Proxy Statement fails to provide:

      a.  All inputs and assumptions upon which the projections are based; and

      b.  Fails to provide all utilized metrics upon which KBW and Houlihan Lokey's analyses were based.

42.     The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

43.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

44.     Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the Merger Consideration's true

worth, the accuracy of KBW or Houlihan Lokey's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by KBW*

45.    In the Definitive Proxy Statement, KBW describes its respective fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

46.    With respect to the *Selected Companies Analysis*, the Definitive Proxy Statement fails to disclose the specific metrics for each selected company.

47.    With respect to the *Selected Transactions Analysis*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific metrics for each selected transaction;

      b.   The date on which each selected transaction was announced;

      c.   The date on which each selected transaction closed; and

      d.   The value of each selected transaction.

48.    With respect to the *Dividend Discount Analysis of SUNS*, the Definitive Proxy Statement fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized discount range of 8.0% to 12.0%;

      b.   The present value of the estimated future dividends of SUNS over the period

from the Closing Date through December 31, 2025;

    c.   The present value of SUNS's implied terminal value at the end of such period;

    d.   The specific terminal value for SUNS calculated;

    e.   The specific inputs and assumptions used to determine the utilized terminal multiple range of 0.90x to 1.10x; and

    f.   The specific inputs and assumptions used to determine the utilized terminal dividend yield range of 6.0% to 10.0%.

49.    With respect to the *Dividend Discount Analysis of SLRC*, the Definitive Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized discount range of 8.0% to 12.0%;

    b.   The present value of the estimated future dividends of SLRC over the period from the Closing Date through December 31, 2025;

    c.   The present value of SLRC's implied terminal value at the end of such period;

    d.   The specific terminal value for SLRC calculated;

    e.   The specific inputs and assumptions used to determine the utilized terminal multiple range of 0.90x to 1.10x; and

    f.   The specific inputs and assumptions used to determine the utilized terminal dividend yield range of 7.0% to 11.0%.

50.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

51.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public SUNS stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

52.     In the Definitive Proxy Statement, Houlihan Lokey describes its respective fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53.     With respect to the *Selected Companies Analysis*, the Definitive Proxy Statement fails to disclose the following:

a. The specific metrics for each selected company;

b. The specific inputs and assumptions used to determine the utilized following metrics to SUNS:

   i. 14.0x to 16.0x to SUNS's estimated 2021E Net Investment Income Per Share;

   ii. 11.0x to 13.0x to SUNS's estimated 2022E Net Investment Income Per Share;

   iii. 7.50% to 8.50% to SUNS's Last Quarter Annualized Dividend Per Share; and

    iv.  0.90x to 1.00x to SUNS's Net Asset Value Per Share.

  c.  The specific inputs and assumptions used to determine the utilized following metrics to SLRC;

    i.  11.0x to 12.0x to SLRC's estimated 2021E Net Investment Income Per Share;

    ii.  10.5x to 12.0x to SLRC's estimated 2022E Net Investment Income Per Share;

    iii.  8.00% to 9.00% to SLRC's Last Quarter Annualized Dividend Per Share; and

    iv.  0.90x to 1.00x to SLRC's Net Asset Value Per Share.

54.    With respect to the *Selected Transactions Analysis*, the Definitive Proxy Statement fails to disclose the following:

  a.  The specific metrics for each selected transaction;

  b.  The value of each selected transaction;

  c.  The specific inputs and assumptions used to determine the utilized selected multiple range of 0.90x to 1.00x to SUNS's Net Asset Value Per Share; and

  d.  The specific inputs and assumptions used to determine the utilized selected multiple range of 0.90x to 1.00x to SLRC's Net Asset Value Per Share.

55.    With respect to the *Dividend Discount Analysis*, the Definitive Proxy Statement fails to disclose the following:

  a.  With respect to SUNS:

    i.  The specific inputs and assumptions used to determine the utilized terminal value multiples of 0.90x to 1.00x to SUNS estimated 2025E

Net Asset Value;

    ii.  The specific inputs and assumptions used to determine the utilized discount range of 7.0% to 9.0%;

  b.  With Respect to SLRC:

    i.  The specific inputs and assumptions used to determine the utilized terminal value multiples of 0.90x to 1.00x to SLRC's estimated 2025E Net Asset Value;

    ii.  The specific inputs and assumptions used to determine the utilized discount range of 6.0% to 8.0%.

56.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public SUNS stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

#### (Against All Defendants)

58.    Plaintiff repeats all previous allegations as if set forth in full herein.

59.    Defendants have disseminated the Definitive Proxy Statement with the intention of

soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.     The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary

to render them non-misleading.

63.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.     The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

65.     The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or

disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of SUNS's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.     The Individual Defendants acted as controlling persons of SUNS within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause SUNS to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled SUNS and all of its employees.  As alleged above, SUNS is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to comply with the Exchange Act to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 8, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Attorneys for Plaintiff*